LEIGH M. CLARK, Retired Circuit Judge.
Appellant was indicted and tried for murder in the first degree. The jury found him guilty of murder in the second degree and fixed his punishment at imprisonment for ninety-nine years. He was sentenced accordingly.
By his appointed counsel on the trial, who was also appointed to represent him on appeal, the only claimed basis for a reversal of the judgment is to the effect that the evidence shows without dispute that defendant was acting in self-defense at the time he killed James Poole, the alleged victim.
There is little conflict in the evidence on the issue as to self-defense. Two eyewitnesses, one a nephew of defendant and the other a son of the woman with whom defendant was living at the time, testified as to what they saw and heard, and defendant himself took the stand and gave his version of what occurred.
In his dedicated effort to discharge his obligation to his client, counsel for appellant gives the following summary of what took place on the occasion of the alleged crime:
“The facts on this case are very simple and show that the Defendant, John Er-vin, Jr., accompanied by his common law wife, Willie Carter Ervin, drove up to a trailer in which he lived with his said common law wife. Upon arriving at the trailer, the Defendant noticed the deceased, James Poole, out in front of the trailer standing near the decedent’s truck. After parking his automobile, the Defendant went back to talk to the deceased. Upon arriving at the location where the deceased was standing, the deceased asked the Defendant if he had a screwdriver and the deceased replied that he did not. Thereupon, the decedent requested the Defendant to take him to Uniontown, Alabama. The Defendant^ replied that he could not take the deceased to Uniontown, Alabama, because, in effect, the decedent had stated that he was going to get the Defendant and Willie Carter Ervin the next time he caught the two of them together.
“Thereupon, after a step backward during which the decedent stated he was a man of his word and did what he said he would do, the decedent put his right hand in his pocket and took two steps directly toward the Defendant; when the Defendant saw these actions by the decedent, he took two steps backward, pulled out his gun and fired at the decedent, killing him.”
Appellant’s counsel properly goes further in narrating some of the evidence as to matters prior to the events summarized, which, of course, are being taken into consideration, but for the present we consider whether the facts stated preclude a finding against defendant on the issue of self-defense. We think they do not.
A glaring defect in the stated facts as a basis for a legally privileged taking of the life of another is the absence of any showing therein that defendant was in imminent danger of great bodily harm or death or that he had reasonable ground for believing at the time that he was in such danger.
To be added to the statement of counsel for appellee are facts shown by the undisputed evidence that deceased was not armed, that he had no gun, no knife, or weapon of any kind, in his pocket or anywhere about him at the time. There was strong contention on the trial that perhaps someone had removed a knife or other weapon from the clothes of deceased, but this contention was not supported by any evidence. The contention, as well as the proof to the contrary, emphasizes the weakness of the defense as to the essential element of imminent danger of death or great bodily harm or reasonable ground for belief that there was. In addition, the evidence shows without dispute, although defendant was not clear in his recollection as to the number of *1153 shots fired, that three distinct shots of the pistol were fired by defendant so effectively as to hit the victim, one grazing a shoulder, another entering his right side, and the third entering into a shoulder area and thence into the right side of the chest cavity, into the left lung and through the tissue of the back and out. The evidence further shows that the pistol snapped once before a bullet was fired and that after the victim had moved from his position when first shot, had walked toward the driveway and fallen in front of the truck, face down, defendant walked over and “put the gun down to” four inches from the victim’s head, at which time the pistol snapped. Defendant then put his gun in his pocket and left the scene.
It would probably not be fair to appellant not to summarize the background evidence. Defendant was living in a mobile home with a woman with whom the victim had previously lived. He and the woman testified that their relationship was that of a common law marriage. However, the evidence shows that she was continuing to go by the name of her deceased husband and was obtaining money in that name. Approximately three months prior to the alleged crime, defendant and decedent had a prior altercation in which decedent shot defendant with a pistol, which altercation grew out of a relationship between defendant and the particular woman. Defendant testified that at that time deceased threatened to kill defendant if he found the two together again.
As to appellant’s statement in his summary of the facts that the truck of the victim was parked in front of defendant’s home, the record shows that it had stopped in front of the mobile home of the woman with whom defendant was living, but that it was on the shoulder of the public road. There is no substantial evidence to the effect that the victim was there for any hostile purpose. The truck had broken down. The hood of it had been lifted, and Poole, the driver, was attempting to get it started. In asking defendant for a screwdriver, there is no evidence of any intent on the part of decedent other than to get the truck started and get away. There was no aggressive movement or word on his part until the remark of defendant relative to the previous altercation between them.
The trial court comprehensively charged the jury on the defense of self-defense and the essential elements thereof. There was no exception to the charge.
It was for the jury to say whether defendant was free from fault in bringing on the difficulty, whether there was reasonable ground for belief that he was in imminent danger of death or great bodily harm, and whether he was within the curtilage of his home so as to come within exception to the usual duty to retreat before taking human life if such can be done without increasing the danger. Cooley v. State, 233 Ala. 407, 171 So. 725; Ray v. State, 253 Ala. 329, 45 So.2d 4; Washington v. State, Ala. Cr.App., 339 So.2d 611. A resolution against defendant of any of the stated elements of the defense of self-defense disenti-tled defendant to the resolution in his favor of the issue of self-defense. McDonald v. State, Ala.Cr.App., 340 So.2d 80, cert. denied, Ala., 340 So.2d 84, Collier v. State, 57 Ala.App. 375, 328 So.2d 626, cert. denied, 295 Ala. 397, 328 So.2d 629; Usrey v. State, 54 Ala.App. 448, 309 So.2d 485, writ denied, 293 Ala. 776, 309 So.2d 489.
We find no error in the record prejudicial to appellant and conclude that the judgment and sentence of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.